**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JAMES DEWITT MCINTOSH II, PETITIONER** | * | **CIVIL ACTION** |
| | * | |
| | * | **CASE NO. 23-cv-1375** |
| **VERSUS** | * | |
| | * | |
| **TRAVIS DAY, WARDEN RESPONDENT** | * | **SECTION "M" (2)** |
| | * | |
| | * | |
| | * | |

**RESPONSE TO PETITION FOR *HABEAS CORPUS* RELIEF**

MAY IT PLEASE THE COURT:

James Dewitt McIntosh II is a state prisoner serving a thirty year sentence following his convictions for four counts of distribution of controlled dangerous substances and his subsequent adjudication as a habitual felony offender. He has petitioned this Court for a writ of habeas corpus.

McIntosh's petition is timely, and his claims are exhausted. But his claims lack merit. The Court should therefore dismiss the petition with prejudice and otherwise deny relief.

**TABLE OF CONTENTS**

PRELIMINARY MATTERS....3

PROCEDURAL HISTORY....5

TIMELINESS....6

EXHAUSTION & PROCEDURAL DEFAULT....6

MERITS REVIEW....6

1. The Confrontation Clause claim (Claim 1)....7

2. The ineffective assistance of counsel claim (Claim 2)....13

CONCLUSION AND PRAYER....18

CERTIFICATE OF SERVICE....19

## PRELIMINARY MATTERS

**1. Custody.**

The respondent does not dispute that the petitioner is in custody.

**2. The state court record.**

The respondent has filed, along with this *Response*, the complete state court record which is described in the separately filed *Notice of Lodging of State Court Record Materials* (ECF Doc. 9).

All references to the state court record materials are listed as "SCR Vol. X" references to the attachments to ECF Doc. 9. (SCR Vol. 1 corresponds to ECF Doc. 9-1; SCR Vol. 2 corresponds to ECF Doc. 9-2, et cetera.)

**3. The facts of the case.**

The defendant sold both marijuana and heroin on two separate occasions, as follows:

> In late 2015, Louisiana State Police ("LSP") Trooper **Heath Miller ("Trp. Miller")** received a tip through Crime Stoppers regarding narcotics sales occurring in St. Tammany Parish.
>
> After confirming the tip with some of his confidential sources, he began an investigation into defendant. Trp. Miller brought in an undercover officer, LSP Trooper **Sarah Gilberti-Abbott ("Trp. Gilberti")**, to coordinate with a confidential source to provide an introduction to defendant and negotiate a $140.00 narcotics purchase.
>
> The first meeting was arranged to take place at a Rouses's parking lot in Covington on November 19, 2015, and was to be for the purchase of heroin and marijuana. With other law enforcement officers surveilling the location, defendant and Trp. Gilberti parked side by side. The confidential source, who was with Trp. Gilberti, got out of the vehicle and conducted a hand-to-hand transaction for marijuana and heroin within the view of Trp. Gilberti. The narcotics were recovered by other troopers immediately thereafter and tested at the State Police laboratory to confirm their authenticity. Later fingerprint analysis

> determined defendant was the source of a fingerprint on a bag of marijuana obtained during the November 19, 2015 drug buy.
>
> On December 1, 2015, Trp. Gilberti and the confidential source again arranged to meet defendant in order to purchase heroin and marijuana at the Sonic Drive-in in Mandeville where defendant was employed. This portion of the investigation was partially recorded, and the video recording was played for the jury. While waiting for a third party to obtain the drugs from another location for defendant to sell to Trp. Gilberti, defendant and the confidential source spoke about text messages that they had sent to each other earlier in the day. The transaction was taking far longer than anticipated, and the confidential source was complaining about how she thought it had been set up well in advance through texts between them earlier in the day. Shortly thereafter the playback stopped due to a dead battery on the recording device. The third party returned in defendant's car, and defendant returned to Trp. Gilberti's vehicle. Defendant then conducted a hand-to-hand transaction, taking money from Trp. Gilberti and handing her heroin and marijuana in exchange. The narcotics were recovered by the investigating troopers soon after and were tested to confirm their authenticity.

*State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, 4.

**4. The petitioner's claims.**

McIntosh raises two claims.

The first claim arises under the Confrontation Clause of the Sixth Amendment, and concerns the admission of the video recording concerning the December 1, 2015 transaction, specifically, the portion of the recording containing the statements made by the confidential informant. ECF Doc. 1-2, pp. 4-13.

The second claim is one of ineffective assistance of counsel based upon trial counsel's cross-examination of Trooper Miller. ECF Doc. 1-2, pp. 14-26.

## PROCEDURAL HISTORY

*Proceedings leading to conviction and sentence.* The district attorney, on July 22, 2016, charged petitioner James Dewitt McIntosh II with two counts distribution of heroin and two counts distribution of marijuana. State Court Record, Volume 1, pg. 48.

The trial was held from December 24-26, 2016, and resulted in verdicts of guilty as charged for all four charged offenses. Three of the verdicts were unanimous; one was rendered by 11-1 vote. SCR Vol. 1, pp. 24-36 (minute entries), id. at 105-106 (verdict forms). The court sentenced the petitioner to thirty years at hard labor as a second felony offender. SCR Vol. 1, pp. 46-47.

*Direct review proceedings.* The First Circuit Court of Appeal affirmed the defendant's convictions and sentences on February 28, 2019, and the Louisiana Supreme Court denied writs on October 21, 2019. *State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, *writ denied*, 19-0734 (La. 10/12/19), 280 So.3d 1175. SCR Vols. 5-6. McIntosh did not seek review from the U.S. Supreme Court.

*Collateral review proceedings.* McIntosh applied for post-conviction relief on September 30, 2020. SCR Vol. 7, pp. 50-92. The trial court denied relief on July 14, 2021. *Id.*, pp. 102-104. McIntosh timely applied for supervisory review from both the First Circuit Court of Appeal and the Louisiana Supreme Court; both courts denied relief, with the final denial of relief occurring on January 18, 2023. SCR Vols. 8, 9, 11.[1]

The instant habeas corpus petition is dated April 20, 2023. ECF Doc. 1, pg. 9.

---

1 McIntosh also litigated a motion to correct illegal sentence which is not germane to this habeas petition. See SCR Vol. 7, pp. 105-106 & SCR Vols. 10, 12.

## TIMELINESS

The respondent does not allege that the petitioner's application is untimely.

## EXHAUSTION & PROCEDURAL DEFAULT

The petitioner's claims are exhausted and not in procedural default.

## MERITS REVIEW

McIntosh's claims were adjudicated on the merits:

- Claim 1 was raised and adjudicated on direct appeal. *See State v. McIntosh*, 275 So.3d 1, 6-7 (La. App. 1 Cir. 2019) ("Assignment of Error #2").

- Claim 2 was raised and adjudicated in post-conviction relief proceedings. *See* SCR Vol. 7, pp. 77-80 (pertinent portion of application for post-conviction relief); SCR Vol. 7, pp. 2-3 (district court's ruling thereon).

Because McIntosh's claims were adjudicated on the merits, his habeas corpus petition "shall not be granted … unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

The Court is familiar with AEDPA's standards governing merits review. The respondent therefore need not and does not expound upon those standards.

**1. The Sixth Amendment claim (Claim 1).**

**A. The details of the petitioner's claim.**

***i. Factual background.***

The petitioner's first claim arises from the fact that the second hand-to-hand drug transaction was recorded (at least in part). As summarized by the First Circuit Court of Appeal:

> On December 1, 2015, Trp. Gilberti and the confidential source again arranged to meet defendant in order to purchase heroin and marijuana at the Sonic Drive-in in Mandeville where defendant was employed. This portion of the investigation was partially recorded, and the video recording was played for the jury. *While waiting for a third party to obtain the drugs from another location for defendant to sell to Trp. Gilberti, defendant and the confidential source spoke about text messages that they had sent to each other earlier in the day. The transaction was taking far longer than anticipated, and the confidential source was complaining about how she thought it had been set up well in advance through texts between them earlier in the day*. Shortly thereafter the playback stopped due to a dead battery on the recording device. The third party returned in defendant's car, and defendant returned to Trp. Gilberti's vehicle. Defendant then conducted a hand-to-hand transaction, taking money from Trp. Gilberti and handing her heroin and marijuana in exchange.

*State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, 4 (emphasis supplied).

The defendant moved prior to trial to exclude the confidential source's statements italicized in the above block-quote. SCR Vol. 1, pp. 82-83. The trial court denied the motion, reasoning that the statements were *res gestae* and non-testimonial. *Compare* SCR Vol. 4, pg. 16, lines 27-31 ("I don't find that it's testimony. I think it's her words under surveillance.") *with* La. C.E. art. 801(D)(4) (codification of *res gestae* doctrine).

The defendant assigned the introduction of these statements into evidence as error on appeal. The Court of Appeal addressed this assignment of error as follows:

> In his second assignment of error, defendant contends that the trial court erred in denying his pre-trial motions attempting to exclude evidence consisting of the confidential source reading on the surveillance recording text messages alleged to have come from defendant. With the confidential source unavailable at trial to cross-examine, defendant asserts his right to confrontation of witnesses was abridged by the trial court's ruling at the pre-trial hearing. At the hearing, the State argued that the statements by the confidential source were not made in anticipation of using them at a subsequent prosecution, and alternatively that they were being introduced for context, not for their actual content, and were consequently not hearsay. The trial court ultimately found the statements were neither testimonial, nor hearsay, but instead the confidential source's "words under surveillance."
>
> The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. *State v. Dressner*, 2008-1366 (La. 7/6/10), 45 So.3d 127, 137, cert. denied, 562 U.S. 1271, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011); *State v. Stokes*, 2014-1562 (La. App. 1st Cir. 6/17/15), 175 So.3d 419, 423. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Out-of-court statements that are testimonial are barred under the Confrontation Clause, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witnesses. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004); State v. Tsolainos, 2007-2443 (La. App. 1st Cir. 10/10/08), 997 So.2d 46, 48 (per curiam), *writ denied*, 2008-2653 (La. 10/9/09), 19 So.3d 6. The *Crawford* court drew a distinction between testimonial and nontestimonial statements and confined its holding to testimonial evidence. *Crawford*, 541 U.S. at 61-68. Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose is to establish or prove past events potentially relevant to later criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822

(2006); *State v. Hayes*, 2016-0441 (La. App. 1st Cir. 9/19/16), 204 So.3d 201, 208, writ denied sub nom., *State v. Hazes*, 2016-1886 (La. 9/6/17), 224 So.3d 979.

As an initial matter, it is uncontested that the confidential source was unavailable at trial, and in fact remained unidentified. Thus, the dispositive question becomes whether her statements were testimonial or nontestimonial.[[2]] Here, there is nothing in the record suggesting whether or not the confidential source knew she was being recorded. That being the case, giving defendant the benefit of assuming the confidential informant was so aware, the statements she was making to Trp. Gilberti could reasonably be presumed to constitute evidence that would be used against defendant in a later prosecution. In addition to addressing operational security concerns, the recording was intended by the LSP to serve that purpose, as demonstrated by its very existence. Moreover, the recording was used by the State at trial in its case-in-chief. Notwithstanding the fact defendant arguably confirmed at least some of the text messages came from him, because the messages themselves were not presented at trial, their introduction by the State through the confidential source rendered them testimonial out-of-court statements inadmissible under the Confrontation Clause. *Cf. State v. Lang*, 2013-0021 (La. App. 5th Cir. 10/9/13), 128 So.3d 330, *writ denied*, 2013-2614 (La. 5/2/14), 138 So.3d 1244.

Therefore, the next consideration is what impact the erroneous admission of these statements had on the result of defendant's trial. Mistaken application of the rule of *Crawford* is subject to harmless-error analysis. *See State v. Cunningham*, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1119; *State v. Queen*, 2009-1373 (La. App. 1st Cir. 2/12/10), 2010 WL 532337 *2 (unpublished), *writ denied*, 2010-0625 (La. 10/29/10), 48 So.3d 1098.

Here, the *Crawford* confrontation violation was harmless. During the November 19, 2015 transaction, the confidential informant gave defendant the money in exchange for drugs received immediately in front of Trp. Gilberti. Trp. Gilberti personally took the drugs from defendant's hand after giving him money during the December 1, 2015 transaction. Trp. Gilberti made an in-court identification of defendant as the person who sold her the drugs leading to the instant four counts. Many of the statements were relative to the

2 The First Circuit appears to have ignored the prosecution's argument that the statements were not offered for the truth of the matter asserted and therefore not hearsay at all—that "they were being introduced for context, not for their actual content."

> fact that the deal had allegedly been set up long before but was frustrating the buyers when it was so delayed in its completion. With the confidential source's statements aside, there was more than adequate evidence for a jury to find beyond a reasonable doubt that defendant committed all four counts of distribution of narcotics. Thus, the guilty verdict rendered was surely unattributable to the error. *See* La. Code Crim. P. art. 921; *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993); *State v. Casey*, 99-0023 (La. 1/26/00), 775 So.2d 1022, 1033, cert. denied, 531 U.S. 840 (2000); *State v. Troquille*, 2007-1486 (La. App. 1st Cir. 6/6/08), 2008 WL 2332234 *5 (unpublished), *writ denied*. 2008-2186 (La. 4/24/09), 7 So.3d 1197. This claim is without merit.

*State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, 6-7.

***ii. The petitioner's claim.***

In this habeas action, the petitioner complains that the First Circuit Court of Appeal erred in its harmless error analysis. ECF Doc. 1-2, pp. 5-13.

**B. Additional pertinent facts.**

The evidence produced at trial reflects that petitioner sold drugs, both heroin and marijuana, on two separate occasions. The first time—November 19, 2015—petitioner handed the drugs to a cooperating individual (CI) in the presence of Louisiana State Police Trooper Sarah Gilberti.[3] The second time—December 1, 2015—he handed the drugs directly to Trooper Gilberti.[4]

The evidence collected from November 19, 2015 was analyzed for fingerprints. The baggie containing the marijuana had James McIntosh's fingerprints on it.[5]

---

3 SCR Vol. 2, pp. 63-77 (testimony of Trooper Miller); SCR Vol. 3, pp. 413-418 (testimony of Trooper Gilberti).

4 SCR Vol. 2, pp. 71-111 (testimony of Trooper Miller); SCR Vol. 3, pp. 418-428 (testimony of Trooper Gilberti).

5 SCR Vol. 2, pg. 120-121 (testimony of Trooper Miller); SCR Vol. 2, pg. 187 (testimony of technician who developed fingerprints for analysis); SCR Vol. 3, pp.9-17 (testimony of fingerprint analyst).

The December 1, 2015 transaction was recorded, at least up until the point where the recording device's battery ran out of power.[6] The recording captures the words of McIntosh himself, explaining that he does not have the drugs on him but that he's sending someone else to retrieve the drugs in order to sell them.[7] When the transaction is taking longer than expected, McIntosh explains:

> Do you hear where I'm coming from? Dope is a life sentence. You can't move the way you want with this shit. . . . [W]e have to move a certain way because they have cameras and they have rats so there is just certain things you have to do. You can't be, to be safe, personally I would rather wait and be safe than rush it and shit go wrong."[8]

### C. Overview of the applicable law.

To be entitled to relief, the petitioner must make satisfy the requirements imposed by both *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and by AEDPA. *See Brown v. Davenport*, 142 S. Ct. 1510 (2022).[9] The Supreme Court has recently explained:

> Proof of prejudice under *Brecht* does not equate to a successful showing under AEDPA....

---

6 SCR Vol. 2, pp. 77, 87-88 .

7 SCR Vol. 2, pp. 91-92 (statement by McIntosh, "he's about to go right down the street and pick it up because he didn't want to bring it to work cause our GM was here today"); id. at pg. 94 (statement by McIntosh , "it won't be but ten minutes. He's about to leave and take my car ad go down the street and come back and then I will have the bud and the boy for you"). *See also* SCR Vol. 3, pg. 76 (testimony that "bud" is a slang term for marijuana, and "boy" is a slang term for heroin).

8 SCR Vol. 2, pp. 102-103.

9 In *Brown*, the Court explained: "When a state court has ruled on the merits of a prisoner's claim, a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* and the one Congress prescribed in AEDPA." 142 S. Ct. at 1517. "[S]atisfying *Brecht* is only a necessary, not a sufficient, condition to relief. AEDPA too must be satisfied." *Id*. at 1520. "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents [for habeas relief on the merits] or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Id*. at 1524. (emphasis in original).

> When a state court has applied *Chapman* [*v. California*, 386 U.S. 18 (1967)], § 2254(d)(1) requires a habeas petitioner to prove that the state court's decision was unreasonable. *Cullen v. Pinholster*, 563 U.S. 170, 181. To accomplish that, a petitioner must persuade a federal court that no "fairminded juris[t]" could reach the state court's conclusion under this Court's precedents. [*Davis v.*] *Ayala*, 576 U.S. [257,] 269 [(2015)] (internal quotation marks omitted). Similarly, if a petitioner alleges the state court's decision "was based on an unreasonable determination of the facts" under § 2254(d)(2), it is not enough to show that "reasonable minds reviewing the record might disagree about the finding in question." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (internal quotation marks and alteration omitted). By contrast, under *Brecht* a petitioner may prevail by persuading a federal court that it alone should harbor "grave doubt"—not absolute certainty—about whether the trial error affected the verdict's outcome. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). In sum, where AEDPA asks whether <u>every</u> fairminded jurist would agree that an error was prejudicial, *Brecht* asks only whether a federal habeas court <u>itself</u> harbors grave doubt about the petitioner's verdict.

*Brown*, *supra*, 142 S. Ct. at 1525 (emphasis in original).

In this case, the petitioner fails to satisfy either *Brecht* or AEDPA. The evidence that convicted the petitioner was the eyewitness testimony of Trooper Gilberti, which was corroborated by the petitioner's fingerprints (for the November 19, 2015 transaction) and the petitioner's statements (for the December 1,2015 transaction). There is no basis for the Court to conclude that the statements *of the* had any impact whatsoever on the jury's decision to convict.

There is merit to this claim.

**2. The ineffective assistance of counsel claim (Claim 2).**

**A. The details of the petitioner's claim.**

***i. Factual background.***

During trial, the case agent—Louisiana State Trooper Heath Miller—testified that he did not arrest the petitioner after either of the two drug transactions that he witnessed. Miller explained:

> The majority of our State Police investigations we do not arrest anybody on site. They are actual undercover investigations where we do multiple undercover purchases. Some, we've had some that went on for years, you know? So there's a lot of things play into it. We, I let the investigation to go on to try to find higher level sources. We carry the investigation as far as we can.

SCR Vol. 2, pp. 138-139. He also explained that an immediate arrest after a purchase would compromise the identity of the undercover agent. Id., pg. 99.

Defense counsel questioned Trooper Miller about the December 1, 2015 transaction, and then asked:

> Q: Again, Mr. McIntosh was not arrested on December 1?
>
> A: That's correct.
>
> Q: And again, the reason was to maintain the integrity of this investigation?
>
> A: And to continue that investigation, that's correct.

SCR Vol. 2, pg. 150.

That line of questioning continued, as follows:

> Q: You never made any other buys?
>
> A: I couldn't.
>
> Q: Okay. So what I noticed was we have November 19th.
>
> A: November 19th.
>
> Q: November 19th and --

A: December 1st, yes sir.

Q: Then you plan another buy on December 1st?

A: Yes, sir.

Q: What prevented you in January, say in 2 015 when you got an arrest warrant from conducting another buy?

A: Cause he was incarcerated.

SCR Vol. 2, pg. 150-151.

The prosecution followed up on this line of questioning during redirect examination, as follows:

Q: You were asked why you didn't further this investigation and why you didn't set up more buys. Why didn't you?

A: He was in jail.

Q: Did you put him there?

A: No.

Q: He was arrested on something else?

A: Yes, ma'am.

Q: Could you conduct more narcotics investigations while he is incarcerated?

A: No, ma'am.

Q: So you were forced to end your investigation?

A: Yes, ma'am.

Q: Then you got an arrest warrant for him?

A: Yes, ma'am.

Q: Where at?

A: The St. Tammany Parish Jail.

SCR Vol. 2, pp. 160.

At this point, defense counsel moved for a mistrial, which motion was denied.

SCR Vol. 2, pp. 160-161.

When the defendant appealed his convictions and sentences, one of his

assignments of error related to the denial of this motion for mistrial. *See State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, 4 ("In assignment of error number one, defendant contends that the State improperly introduced other crimes evidence when it purposefully sought to highlight the fact that defendant was already incarcerated for an unrelated offense at the time the arrest warrant for the instant offenses was executed.").

The First Circuit Court of Appeal reasoned as follows in finding no merit tot this assignment of error:

> Here, it is uncontested that defense counsel asked Trp. Miller why no more undercover narcotics purchases were made in the instant investigation. Thus, Trp. Miller's original answer was not elicited by the State. The subsequent State questioning fell within the ambit of redirect examination to clarify, and respond to, points made during cross-examination by defense counsel.
>
> Moreover, even had defense counsel not "opened the door" to further testimony regarding defendant's custody status at the time of his arrest on the instant charges, that reference alone was not sufficient to warrant a mistrial. *See State v. Stevens*, 2013-1162 (La. App. 3rd Cir. 6/18/14), 140 So.3d 1267, 1282 *writ denied*, 2014-1530 (La. 12/8/14), 156 So.3d 42; *cf. State v. Hayes*, 2010-685 (La. App. 5th Cir. 5/24/11), 70 So.3d 27, 40, writ denied, 2011-1370 (La. 2/3/12), 79 So.3d 1024.

*McIntosh*, 275 So.3d at 5-6.

***ii. The petitioner's claim.***

The petitioner's second claim is that counsel rendered ineffective assistance "due to his unprofessional error of opening the door for the prosecution." ECF Doc. 1-2, pg. 14.

**B. The state court adjudication of the petitioner's claim.**

The state district court rejected the ineffective assistance of counsel claim by relying upon the above-quoted analysis from the First Circuit Court of Appeal on direct appeal:

> McIntosh asserts he received ineffective assistance of counsel when his counsel questioned Trooper Miller as to whether the officer planned to purchase any more drugs from petitioner. The officer responded that he had. When asked if those purchases were made, Trooper Miller responded that he could not do so because the petitioner was incarcerated. Defense counsel failed to object to this answer. Later, the state raised the issue on redirect examination for further explanation that the petitioner's incarceration was due to unrelated charges. At that point, defense counsel objected and moved for a mistrial. The Court denied the mistrial, finding that defense counsel had "opened the door" to the issue such that the state on redirect could elicit an explanation. When the underlying issue was analyzed on direct appeal, the appellate court found the petitioner was not prejudiced by the introduction of the other crimes evidence such that a mistrial was mandated. *See State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, 5.
>
> Even pretermitting a decision about whether trial counsel's performance was deficient in this regard, the Court finds the petitioner has failed to meet his burden for relief. The appellate court has already found that the petitioner suffered no prejudice from the introduction of other crimes evidence caused by defense counsel's asserted error. McIntosh is required to prove both prongs of the *Strickland* analysis, both deficient performance and prejudice resulting from that deficient performance. Here, the appellate court's decision on the underlying issue forecloses McIntosh from meeting his burden of proving constitutionally ineffective assistance.

SCR Vol. 7, pp. 103-104.

The higher courts denied relief without comment. SCR Vols. 8, 9, 11.

### C. Analysis.

The state courts found that petitioner failed to show prejudice: "The appellate court has already found that the petitioner suffered no prejudice from the introduction of other crimes evidence caused by defense counsel's asserted error." SCR Vol. 7, pp. 103-104 (district court's ruling denying post-conviction relief).

The state district court was referencing the following discussion from direct appeal:

> [E]ven had defense counsel not "opened the door" to further testimony regarding defendant's custody status at the time of his arrest on the instant charges, that reference alone was not sufficient to warrant a mistrial.

*State v. McIntosh*, 18-0768 (La. App. 1 Cir. 2/28/19), 275 So.3d 1, 5-6.

This discussion is about Louisiana jurisprudence holding that a mistrial is not required unless a witness testifies to information that constitutes elicits an *unambiguous* reference to another criminal act. This is evident from the Court's citation to *State v. Hayes*, 70 So.3d 27 (La. App. 5 Cir. 2011). The *Hayes* Court reasoned that "the detective's nonresponsive answer indicating that Mr. Hayes had been arrested for other crimes did not warrant the drastic remedy of mistrial where any permissible inference referred to ambiguous arrests and the detective did not indicate for what offenses Mr. Hayes might have been arrested on other occasions." *Id*. at 40. *See also*, *e.g.*, *State v. Brown*, 677 So.2d 1057, 1067-1068 (La. App. 1 Cir. 1996) (investigating officer's testimony that "I used to work in the jail, and I knew [the defendant] from the jail" did not warrant a mistrial because it "was not an unambiguous reference to a particular crime committed or alleged to have been

committed by the defendant")..

In the petitioner's case, as in *Hayes* (and in *Brown*), the detective merely noted the fact of an arrest and did not indicate for what offenses the petitioner might have been arrested.

The state district court correctly concluded that the petitioner suffered no prejudice: no relief would be warranted even if the detective's answer been given without defense counsel first opening the door.

The petitioner falls far short of establishing that he is entitled to habeas corpus relief on grounds of ineffective assistance of counsel.

There is no merit to this claim.

CONCLUSION AND PRAYER

The petitioner fails to demonstrate that he is entitled to habeas corpus relief. The respondent respectfully prays that the Court dismiss the instant petition with prejudice and otherwise deny relief.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney,
22nd Judicial District
701 Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon petitioner by mailing a copy, postage pre-paid, to:

James Dewitt McIntosh II, DOC # 582793
Rayburn Correctional Center
27268 Highway 21 N.
Angie, LA 70426
*Petitioner, pro se*

This the 17th day of July, 2023, at Covington, Louisiana.

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney