UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JAMES DEWITT MCINTOSH, II                                    CIVIL ACTION

VERSUS                                                               NO. 23-1375

TRAVIS DAY, WARDEN                                          SECTION "M"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases.  Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary.[2]  For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## I.      FACTUAL BACKGROUND

Petitioner James Dewitt McIntosh, II, is a convicted inmate incarcerated in the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.[3]  On July 22, 2016, McIntosh was charged by a bill of information in St. Tammany Parish with two counts of distributing heroin and two counts

---

[1] The State electronically filed the record at ECF Nos. 9, 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, 9-7, 9-8, 9-9, 9-10, 9-11, and 9-12.

[2] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  *Id*. § 2254(e)(2)(B).

[3] ECF No. 1 at 1.

of distributing marijuana.[4]  McIntosh pled not guilty on August 4, 2016.[5]  The Louisiana First

Circuit Court of Appeal summarized the established facts as follows:

> In late 2015, Louisiana State Police ("LSP") Trooper John Heath Miller ("Trp. Miller") received a tip through Crime Stoppers regarding narcotics sales occurring in St. Tammany Parish.  After confirming the tip with some of his confidential sources, he began an investigation into defendant.  Trp. Miller brought in an undercover officer, LSP Trooper Sarah Gilberti-Abbott ("Trp. Gilberti"), to coordinate with a confidential source to provide an introduction to defendant and negotiate a $140.00 narcotics purchase.  The first meeting was arranged to take place at a Rouses's parking lot in Covington on November 19, 2015, and was to be for the purchase of heroin and marijuana.  With other law enforcement officers surveilling the location, defendant and Trp. Gilberti parked side by side.  The confidential source, who was with Trp. Gilberti, got out of the vehicle and conducted a hand-to-hand transaction for marijuana and heroin within the view of Trp. Gilberti.  The narcotics were recovered by other troopers immediately thereafter and tested at the State Police laboratory to confirm their authenticity.  Later fingerprint analysis determined defendant was the source of a fingerprint on a bag of marijuana obtained during the November 19, 2015 drug buy.
>
> On December 1, 2015, Trp. Gilberti and the confidential source again arranged to meet defendant in order to purchase heroin and marijuana at the Sonic Drive-in in Mandeville where defendant was employed.  This portion of the investigation was partially recorded, and the video recording was played for the jury.  While waiting for a third party to obtain the drugs from another location for defendant to sell to Trp. Gilberti, defendant and the confidential source spoke about text messages that they had sent to each other earlier in the day.  The transaction was taking far longer than anticipated, and the confidential source was complaining about how she thought it had been set up well in advance through texts between them earlier in the day.  Shortly thereafter the playback stopped due to a dead battery on the recording device.  The third party returned in defendant's car, and defendant returned to Trp. Gilberti's vehicle.  Defendant then conducted a hand-to-hand transaction, taking money from Trp. Gilberti and handing her heroin and marijuana in exchange.  The narcotics were recovered by the investigating troopers soon after and were tested to confirm their authenticity.[6]

McIntosh proceeded to a jury trial on October 24 through 26, 2016, and was found guilty

as charged by a unanimous verdict as to counts two, three and four and a verdict of eleven to one

---

[4] ECF No. 9-1 at 48-49, Bill of Information, 7/22/16.
[5] *Id.* at 20, Min. Entry, 8/4/16.
[6] *State v. McIntosh*, 275 So. 3d 1, 4 (La. App. 1st Cir. 2/28/19); ECF No. 9-6 at 24-25, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.

as to count one.[7]   The trial court denied McIntosh's post-trial motions on December 8, 2016.[8]   On that same day, the trial court sentenced McIntosh to twenty-five years at hard labor for the distribution of heroin convictions to be served without benefit of parole, probation, or suspension of sentence, and imprisonment at hard labor for five years for the marijuana convictions.[9]

The State filed a multiple bill.[10]   On November 30, 2017, the state trial court found McIntosh to be a second felony offender.[11]   The court vacated the prior sentence as to counts one and two and re-sentenced McIntosh to a term of imprisonment of thirty years without the benefit of probation or suspension of sentence and to be served concurrently with his sentences for counts three and four.[12]

On direct appeal, McIntosh's appointed counsel asserted three assignments of error: (1) the State improperly introduced evidence of other crimes and the trial court erred in denying his motion for mistrial; (2) the trial court erred in denying his pretrial motions attempting to exclude evidence consisting of the confidential source reading on the surveillance recording text messages alleged to have come from McIntosh; and (3) the trial court erred in failing to grant his motion for new trial when the State made an improper closing argument.[13]

---

[7] ECF No. 9-1 at 24-26, Trial Mins., 10/24/16; *id.* at 27-31, Trial Mins., 10/25/16; *id.* at 32-36, Trial Mins., 10/26/15; *id.* at 124-25, Verdicts, 10/26/16; ECF No. 9-2 at 35-168, Trial Tr., 10/25/16; *id.* at 169-95, Trial Tr., 10/26/16; ECF No. 9-3 at 2-157, Trial Tr. (con't), 10/26/16.; ECF No. 9-4 at 7-191, Trial Tr., 10/24/16.

[8] ECF No. 9-1 at 37, Min. Entry, 12/8/16; *id.* at 126, Motion for New Trial, 10/28/16; *id.* at 128, Motion in Arrest of Judgment, 10/28/16; *id.* at 130, Motion for Judgment of Acquittal, 10/28/16; ECF No. 9-3 at 158-75, Sentencing Trans., 12/8/16.

[9] ECF No. 9-1 at 38, Min. Entry, 12/8/16; ECF No. 9-3 at 158-75, Sentencing Trans., 12/8/16.

[10] ECF No. 9-1 at 132, Multiple Offender Bill of Information, 11/29/16.

[11] ECF No. 9-1 at 46-47, Multiple Offender Hearing & Re-Sentencing Minutes, 11/30/17; ECF No. 9-7 at 15-30, Multiple Offender Hearing & Re-Sentencing Tr., 11/30/17.

[12] ECF No. 9-1 at 46-47, Multiple Offender Hearing & Re-Sentencing Minutes, 11/30/17; ECF No. 9-7 at 15-30, Multiple Offender Hearing & Re-Sentencing Tr., 11/30/17.

[13] ECF No. 9-5 at 14-35, Appellate Brief, 2018-KA-0768, 7/13/08.

On February 28, 2019, the Louisiana First Circuit Court of Appeal affirmed McIntosh's convictions and sentences.[14]  The court determined that the trial court did not abuse its discretion in finding that the defense opened the door to testimony regarding the reason the investigation ended thereby allowing the State an opportunity to elicit testimony regarding the procedural details of why the investigation ended.[15]  The court found that, although the admission of the text messages through the statements by the confidential source were erroneous, the error was harmless.[16]  Finally, the court found that the prosecution's closing argument that it was defense counsel's job to try to "walk his client out of the door" did little to prejudice McIntosh given the evidence properly admitted at trial, and, thus, trial court did not abuse its discretion in denying the motion for new trial.[17]  On October 21, 2019, the Louisiana Supreme Court denied McIntosh's related writ application without assigning reasons.[18]

On September 30, 2020, McIntosh filed a pro se application for post-conviction relief asserting the following claims:[19]

(1) the non-unanimous jury verdict violated the Sixth and Fourteenth Amendments; and

(2) ineffective assistance of counsel in failing to (a) object to the non-unanimous jury verdict; (b) investigate the case which resulted in counsel opening the door to permit the prosecution to elicit other crimes evidence.

---

[14] *State v. McIntosh*, 275 So. 3d 1 (La. App. 1st Cir. 2/28/19); ECF No. 9-6 at 23-33, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.

[15] *Id.* at 3-6; ECF No. 9-6 at 25-28, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.

[16] *Id.* at 6-9; ECF No. 9-6 at 28-31, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.

[17] *Id.* at 9-10; ECF No. 9-6 at 31-32, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.

[18] *State v. McIntosh*, 280 So. 3d 1175 (La. 10/21/19); ECF No. 9-6 at 1, La. S. Ct. Order, 2019-KO-00734. 10/21/19.

[19] ECF No. 9-7 at 50-94, Application for Post-Conviction Relief, 10/13/20 (dated 9/30/20).  McIntosh also litigated a motion to correct sentence which is not relevant to his habeas petition.

On July 14, 2021, the trial court denied McIntosh's application for post-conviction relief.[20] The trial court found that, under *Edwards v. Vannoy*, 593 U.S. ----, 141 S. Ct. 1547 (2021), McIntosh did not have the right to retroactive application of the jury unanimity rule set forth in *Ramos v. Louisiana*, 590 U.S. ----, 140 S. Ct. 1390 (2020).[21]   The trial court further found that, because the appellate court found that McIntosh did not suffer any prejudice from the introduction of other crimes evidence, he had not met his burden of showing ineffective assistance of counsel.[22]

On September 24, 2021, McIntosh filed a writ application to the Louisiana First Circuit Court of Appeal.[23]   On November 29, 2021, the court stayed the writ application as it related to the *Ramos* claim, and denied it in all other respects.[24]   On October 26, 2022, the court found that the jury unanimity rule in *Ramos* did not apply retroactively in Louisiana, citing *State v. Reddick*, 2021-01893 (La. 10/21/22), --- So. 3d ----.[25]

On January 18, 2023, the Louisiana Supreme Court denied McIntosh's writ application.[26]

## II.   FEDERAL HABEAS PETITION

On April 20, 2023, McIntosh filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[27]   McIntosh asserts the following claims:

---

[20] ECF No. 9-7 at 102-04, Judgment on Post-Conviction Relief with Incorporated Reasons for Judgment, 7/14/21.

[21] *Id.* at 102-03.

[22] *Id.* at 103-04.

[23] ECF No. 9-9 at 3-67, 1st Cir. Writ Application, 2021 KW 1161, 9/28/21 (dated 9/24/21).

[24] ECF No. 9-9 at 2, La. App. 1st Cir. Order, 2021 KW 1161, 11/29/21.

[25] *State v. McIntosh*, No. 2021 KW 1161, 2022 WL 14812540 (La. Oct. 26, 2022); ECF No. 9-9 at 1, La. App. 1st Cir. Order, 2021 KW 1161, 10/26/22 (La. 10/26/22); ECF No. 9-7 at 114, 1st Cir. Order, 2021 KW 1161, 10/26/22.

[26] *State v. McIntosh*, 353 So. 3d 725; ECF No. 9-11 at 1. La. Sup. Ct. Order, 2022-KH-00042, 1/18/23.

[27] ECF No. 1. The Fifth Circuit applies the "mailbox rule" to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  McIntosh dated his signature April 20, 2023.  ECF No. 1 at 9.

(1) the trial court erred in admitting hearsay evidence in violation of his right to confrontation; and

(2) ineffective assistance of counsel.[28]

The State filed a response in opposition to McIntosh's petition and conceded that it was timely filed and that his claims are exhausted.[29]  The State asserts that McIntosh's claims are meritless.[30]

On October 12, 2023, the Court instructed the State to supplement the record with a certified copy of the December 1, 2015 recording of the undercover narcotics transaction.[31]  On November 14, 2023, the State complied with that order.[32]

## III.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[33] and applies to habeas petitions filed after that date.[34]  The AEDPA therefore applies to McIntosh's petition filed on April 20, 2023.[35]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.  In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[36]  Here, the State does not seek to time bar McIntosh's federal habeas petition,

---

[28] ECF No. 1-2 at 4-27.

[29] ECF No. 10 at 6.

[30] *Id.* at 7-18.

[31] ECF No. 11.

[32] ECF Nos. 12 and 13.

[33] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[35] *See* note 27 *supra*.

[36] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

nor does it claim that state court review has not been exhausted or that any enumerated claim is in procedural default.[37]  This federal habeas court may review McIntosh's claims.

Nevertheless, for the reasons that follow, McIntosh is not entitled to federal habeas relief.

**A. <u>Standards of a Merits Review</u>**

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[38] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[39]  The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[40]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

---

[37] ECF No. 10 at 6.
[38] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).
[39] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).
[40] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[41]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[42] "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[43]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[44] Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[45] The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[46]

---

[41] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[42] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[43] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[44] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[45] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[46] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

IV.    **MCINTOSH'S CLAIMS**

A. **Claim One: Confrontation Clause**

McIntosh claims that the trial court erred in admitting hearsay evidence in violation of his right to confrontation.   McIntosh specifically points to an undercover recording where the confidential informant was heard reading alleged text messages from McIntosh regarding the delivery of narcotics to her.

The State argues that McIntosh fails to demonstrate harmful error or that every fairminded jurist would agree that the error was prejudicial.   The State claims that, given that Trooper Gilberti witnessed the December 1, 2015, drug transaction and the November 19, 2015, transaction was corroborated by McIntosh's fingerprints, there is no basis to conclude that the statements of the confidential source had any impact on the jury's verdict.

Before trial, McIntosh sought to exclude evidence of certain statements made by the confidential informant and recorded on December 1, 2015.[47]   In that motion, McIntosh asserted that on "two separate occasions during the aforementioned video recording, an unidentified female gives a monologue of what is allegedly being said to her via text message by Defendant regarding the delivery of narcotics to her."[48]  Defense counsel pointed to two different times on the recording that were approximately thirty seconds each.[49]   The trial court held a hearing on October 17, 2016.[50]  The prosecution argued:

> The C.I. would not have any idea what she was doing when she was literally just narrating what Mr. McIntosh had texted her.  As far as attacking whether, who sent what or whatever, I think, you know, even the U.C. could be crossed on that at trial and maybe just go to the credibility and the evidence.

---

[47] ECF No. 9-1 at 101-02, Motion to Exclude Testimonial Hearsay, 10/7/16.
[48] *Id.* at 101.
[49] ECF No. 9-2 at 29-30, Hearing Transcript, 10/17/16.
[50] *Id.*

But we would argue that it needs to be presented not only for context but also because it's not confrontation and hearsay.[51]

The defense argued:

> With regard to the other video, with the small snippets of the C.I. reading, she appears to be reading from her phone. It can't be confirmed that's where she is reading from. She appears in his [sic] narration of these text messages, makes it seems as if she is reading text messages from James McIntosh. But we don't know that there was a text message there. And even if there was, we don't know that it came from James. And she's part of a covert operation. She knows she's reading this into a video.
>
> By allowing those into the record, we've allowed her to testify by, and simultaneously denying Mr. McIntosh to cross-examine. That's direct violation of the sixth amendment.[52]

The State replied that the evidence was not hearsay because they were McIntosh's statements and that the evidence was not testimonial, and was not offered for the truth of the matter asserted.[53] The trial court deferred ruling on the motion.[54]

On the morning of trial, defense counsel reiterated his argument that playing the portion of the video that included the confidential source reading alleged text messages would be a violation of McIntosh's Sixth Amendment right to confrontation.[55]   The prosecution responded that the confidential source's statements were non-testimonial statement and constituted spontaneous utterances that were not going to offered for the truth of the matter asserted.[56]   The State further argued that, despite listening to the recording on multiple occasions, it was difficult to discern what was actually said.[57]   The trial court found that the disputed portion of the recording, which was

---

[51] *Id.* at 30.
[52] *Id.* at 31-33.
[53] *Id.* at 32.
[54] *Id.* at 32-33.
[55] ECF No. 9-4 at 14, Trial Tr, 10/24/2016.
[56] *Id.* at 14-15.
[57] *Id.* at 16.

approximately twenty seconds, was not testimonial and not hearsay, and denied McIntosh's motion.[58]

At trial, the State played the recording of the December 1, 2015 transaction.[59]  The recording consists of the confidential source and Trooper Gilberti waiting in the vehicle for McIntosh to deliver them drugs.[60]  At many times throughout the recording, statements are difficult to discern due to loud music playing on the vehicle radio and outside noise.[61]  Approximately nineteen minutes into the recording, McIntosh appears at the window of the vehicle and tells the confidential source that another man is "about to go right down the street to pick it up."[62] McIntosh further explains that he did not want to bring "it" to work because the general manager was on site.[63]  McIntosh tells the confidential informant that it is "literally right down the street" and to wait for ten minutes and when he comes back "we'll do that."[64]  McIntosh states, "It won't be but ten minutes.  He's about to leave and take my car and go down the street and come back and then we will have the bud and the boy for you right now."[65]  McIntosh states, "You'll see. He's about to leave in a little bit.  I gotta go back in 'cuz it's busy."[66]  McIntosh then leaves to return to his job inside the Sonic.[67]  The confidential informant tells McIntosh "don't take forever."

---

[58] *Id.* at 15-16; ECF No. 9-1 at 24, Trial Mins., 10/24/16.

[59] ECF No. 9-2 at 78-79, 82-83, 85-87, Trial Tr., 10/25/16.  The recording is approximately 47 minutes long.  ECF No. 13.  The parties stipulated that first nine minutes of the recording consist of Gilberti and the confidential source traveling to the Sonic and the recording was published from the nine minute mark.  ECF No. 9-2 at 79, Trial Tr., 10/25/16.  The trial court denied the State's request to provide the jury with a transcript of the recording.  *Id.* at 80-82.

[60] ECF No. 13.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*  Both Miller and Gilberti testified that "bud" and "boy" are common terms for heroin and marijuana. ECF No. 9-2 at 95, Trial Tr., 10/25/16; ECF No. 9-3 at 76 (con't), Trial Tr., 10/26/16.

[66] *Id.*

[67] *Id.*

McIntosh replies, "No, I ain't.  We about to do this right now." [68]  Approximately ten minutes later, the confidential source, who appears to be reading from her cell phone, states, "it's in motion," and "won't take long." [69]  The confidential source also appears to say, "he says it will be here soon," and "yeah, it won't take long." [70]  The confidential source states, "I got moves I have to make" and reads, "he says, yeah I know but it won't take long."[71]

Thereafter, McIntosh returns to the vehicle a second time and his face and arm tattoos can be seen at various times.[72]  The confidential source appears to say, "I thought you said he was on his way earlier to get the stuff." [73]  McIntosh replies, "Yeah, our boy is but my boy has to meet him.  I can't leave.  I'm not off.  He's gotta leave and go get it." [74]  The confidential source replies, "Oh God, James, you told me it was in motion way earlier." [75]  McIntosh replies, "It is motion," to which the confidential source states, "You told me this at like 2:00….I have people waiting. She has people waiting." [76]  The confidential source asks, "Where's he at?," and McIntosh replies, "He's right down the street." [77]  The confidential source then states, "You said that earlier."[78] McIntosh replies, "You texted me…I said, 'go back and chill at…  It's in motion.'  6:16." [79]  The confidential source replies, "You texted me buku earlier today and said it's on its way." [80] McIntosh replies, "Yeah, it's in motion.  It's on its way.  Whatcha think people don't.  They can't

---

[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*

move like they talking about."[81]   The confidential source replies, "I know but, I've been telling you about this."[82]   McIntosh replies, "You know what I am saying?  I can't make another man move faster.  You know what I am saying?"[83]

The confidential source then appears to be scrolling through her phone and states, "I'm trying to find where you told me.  I'm gonna tell you what time.  That's yesterday.  Last night."[84]   McIntosh makes a statement about the confidential source being patient.[85]   The confidential source states, "I'm trying."[86]   McIntosh states, "I go in at four.  O.K.  My boy gets off at six."[87]   The confidential source replies, "You didn't say your boy gets off at six."[88]   The confidential source and McIntosh speak simultaneously and many of their statements cannot be understood.[89]   McIntosh eventually states, "You cannot move the way you want to with this.  I'm just saying, I know you are frustrated."[90]   The confidential source says, "It feels really sketchy to me."[91]   McIntosh replies, "We all work and we all hustle.  The thing is we have to move in a certain way because they have cameras and they have rats.  So there is just certain things you have to do.  You can't be [unintelligible]…to be safe.  I'd rather, personally I would rather wait and be safe than rush it and shit go wrong.  But you, you ain't gotta worry.  It's coming."[92]

---

[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*

The confidential source and McIntosh then make small talk while McIntosh is on break from his shift.[93]   At some point, the confidential source asks McIntosh to refill her drink and he leaves.[94]   While McIntosh is gone, the confidential source states to Gilberti, "This is taking way too long.   Like forever."[95]   McIntosh returns to the vehicle with the confidential source's drink.[96]   The confidential source and McIntosh continue to make small talk for several minutes.[97]   McIntosh appears to be checking his phone.[98]   McIntosh thereafter states, "No.   He just texted me.   He said everything [unintelligible] his house and drive over and get it [unintelligible].   He's actually driving over to his house right now.   He just doesn't want you to know where it is.   If I told you where it is you'd be like OK let's go."[99]   The confidential source asks, "He lives close though?"[100]   McIntosh responds, "Like really close.   I could walk to it.   I told him though you don't walk because she's in a rush."[101]   Gilberti states, "He's going to keep that car."[102]   The confidential source replies, "That's what I was thinking" and "he's stalling." [103]   The confidential source and McIntosh make small talk for another three minutes and then the recording ends.[104]   According to Trooper Miller and Trooper Gilberti, the batteries on the recording device expired.[105]

On direct appeal, the Louisiana First Circuit Court of Appeal denied McIntosh's claim as follows:

---

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] ECF No. 9-2 at 105, Trial Tr., 10/25/16; ECF No. 9-3 at 96, Trial Tr., 10/26/16.

ASSIGNMENT OF ERROR # 2: CONFRONTATION ERROR

In his second assignment of error, defendant contends that the trial court erred in denying his pre-trial motions attempting to exclude evidence consisting of the confidential source reading on the surveillance recording text messages alleged to have come from defendant.  With the confidential source unavailable at trial to cross-examine, defendant asserts his right to confrontation of witnesses was abridged by the trial court's ruling at the pre-trial hearing.  At the hearing, the State argued that the statements by the confidential source were not made in anticipation of using them at a subsequent prosecution, and alternatively that they were being introduced for context, not for their actual content, and were consequently not hearsay.  The trial court ultimately found the statements were neither testimonial, nor hearsay, but instead the confidential source's "words under surveillance."

The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense.  **State v. Dressner**, 2008-1366 (La. 7/6/10), 45 So.3d 127, 137, <u>cert. denied</u>, 562 U.S. 1271, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011); **State v. Stokes**, 2014-1562 (La. App. 1st Cir. 6/17/15), 175 So.3d 419, 423.  The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...."  Out-of-court statements that are testimonial are barred under the Confrontation Clause, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witnesses.  **Crawford v. Washington**, 541 U.S. 36, 68-69, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004); **State v. Tsolainos**, 2007-2443 (La. App. 1st Cir. 10/10/08), 997 So.2d 46, 48 (per curiam), <u>writ denied</u>, 2008-2653 (La. 10/9/09), 19 So.3d 6.  The **Crawford** court drew a distinction between testimonial and nontestimonial statements and confined its holding to testimonial evidence. **Crawford**, 541 U.S. at 61-68, 124 S.Ct. at 1370-74.  Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose is to establish or prove past events potentially relevant to later criminal prosecution.  **Davis v. Washington**, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006); **State v. Hayes**, 2016-0441 (La. App. 1st Cir. 9/19/16), 204 So.3d 201, 208, <u>writ denied sub nom.</u>, **State v. Hazes**, 2016-1886 (La. 9/6/17), 224 So.3d 979.

As an initial matter, it is uncontested that the confidential source was unavailable at trial, and in fact remained unidentified.  Thus, the dispositive question becomes whether her statements were testimonial or nontestimonial.  Here, there is nothing in the record suggesting whether or not the confidential source knew she was being recorded.  That being the case, giving defendant the benefit of assuming the confidential informant was so aware, the statements she was making to Trp. Gilberti

could reasonably be presumed to constitute evidence that would be used against defendant in a later prosecution.  In addition to addressing operational security concerns, the recording was intended by the LSP to serve that purpose, as demonstrated by its very existence.  Moreover, the recording was used by the State at trial in its case-in-chief.  Notwithstanding the fact defendant arguably confirmed at least some of the text messages came from him, because the messages themselves were not presented at trial, their introduction by the State through the confidential source rendered them testimonial out-of-court statements inadmissible under the Confrontation Clause.  Cf. **State v. Lang**, 2013-0021 (La. App. 5th Cir. 10/9/13), 128 So.3d 330, <u>writ denied</u>, 2013-2614 (La. 5/2/14), 138 So.3d 1244.

Therefore, the next consideration is what impact the erroneous admission of these statements had on the result of defendant's trial.  Mistaken application of the rule of **Crawford** is subject to harmless-error analysis.  <u>See</u> **State v. Cunningham**, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1119; **State v. Queen**, 2009-1373 (La. App. 1st Cir. 2/12/10), 2010 WL 532337 *2 (unpublished), <u>writ denied</u>, 2010-0625 (La. 10/29/10), 48 So.3d 1098.  Here, the **Crawford** confrontation violation was harmless.  During the November 19, 2015 transaction, the confidential informant gave defendant the money in exchange for drugs received immediately in front of Trp. Gilberti.  Trp. Gilberti personally took the drugs from defendant's hand after giving him money during the December 1, 2015 transaction.  Trp. Gilberti made an in-court identification of defendant as the person who sold her the drugs leading to the instant four counts.  Many of the statements were relative to the fact that the deal had allegedly been set up long before but was frustrating the buyers when it was so delayed in its completion.  With the confidential source's statements aside, there was more than adequate evidence for a jury to find beyond a reasonable doubt that defendant committed all four counts of distribution of narcotics.  Thus, the guilty verdict rendered was surely unattributable to the error.  <u>See</u> La. Code Crim. P. art. 921; **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); **State v. Casey**, 99-0023 (La. 1/26/00), 775 So.2d 1022, 1033, <u>cert. denied</u>, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); **State v. Troquille**, 2007-1486 (La. App. 1st Cir. 6/6/08), 2008 WL 2332234 *5 (unpublished), <u>writ denied</u>, 2008-2186 (La. 4/24/09), 7 So.3d 1197.  This claim is without merit.[106]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[107]

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

---

[106] *McIntosh*, 275 So. 3d at 6-8; ECF No. 9-6 at 28-31, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.
[107] *McIntosh*, 280 So. 3d at 1175; ECF No. 9-6 at 1, La. S. Ct. Order, 2019-KO-00734. 10/21/19.

The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[108]  *Crawford* indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."[109]

When determining whether admitted evidence violated the Confrontation Clause, the Court considers the following: "*First*, did the evidence introduce a testimonial statement by a nontestifying witness?  *Second*, was any such statement offered to prove the truth of the matter asserted?  *Third*, was the nontestifying witness available to testify, or was the defendant deprived of an opportunity to cross-examine him?"[110]  If the answer to each question is "yes," then a confrontation clause violation occurred.[111]

Confrontation Clause errors are subject to harmless error analysis.[112]  Therefore, the issue to be resolved is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[113]  To assess error, federal courts "consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the

---

[108] *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004).
[109] *Id.* at 51, 124 S. Ct. 1354 (internal quotation and citation omitted); *see generally Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011) (recognizing the *Crawford* standard as the controlling doctrine of the Court).
[110] *United States v. Hamann*, 33 F.4th 759, 767 (5th Cir. 2022).
[111] *Id.*(citation omitted).
[112] *Brecht v. Abrahamson*, 507 U.S. 619, 653, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993) (citing *Coy v. Iowa*, 487 U.S. 1012, 1021-1022, 108 S. Ct. 2798, 101 L.Ed.2d 857 (1988)).
[113] *Kotteokos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946).

prosecution's case."[114]  The Fifth Circuit has stated that if the prosecution makes only "fleeting references" to the evidence, "we are less likely to find harm" where "[i]f the [State] relied on the violative testimony in its closing argument, we are more likely to conclude that the error was harmful."[115]

McIntosh cannot show the admission of the hearsay statements in the form of alleged text messages read by confidential source had a "substantial and injurious" effect on the verdict in light of significant other evidence of his guilt, including the testimony of the State's witnesses and McIntosh's own recorded statements.  For instance, with regard to the November 19, 2015 transaction, Trooper Miller recalled that Sarah Abbott, a/k/a Gilberti, was the undercover agent who was present when the confidential source made the buys from McIntosh.[116]  According to Miller, Gilberti and the confidential source met with McIntosh at Rouse's parking lot in Covington.[117]  Miller observed the confidential source exit the vehicle, complete a hand-to-hand transaction with McIntosh, and get back into Gilberti's vehicle.[118]  Gilberti and the confidential source then returned to a predetermined location and handed the drugs over to Miller.[119]  The drugs were field tested.[120]  Additionally, McIntosh's fingerprints on the marijuana bag.[121]

Trooper Dennis Indes, III, testified that he participated in the investigation of McIntosh.[122]  Indes was part of the surveillance team on November 19, 2015.[123]  Indes followed the vehicle

---

[114] *United States v. Edwards*, 303 F.3d 606, 623 (5th Cir. 2002).
[115] *United States v. Hamann*, 33 F. 4th 759, 771 (citations omitted).
[116] ECF No. 9-2 at 65-67, 71, Trial Tr., 10/25/16.
[117] *Id.* at 66-67.
[118] *Id.* at 67.
[119] *Id. at* 68-71.
[120] *Id.* at 70, 139-40.
[121] *Id.* at 139.
[122] ECF No. 9-3 at 48, 51, Trial Tr. (con't), 10/26/16.
[123] *Id.* at 48, 51.

McIntosh was driving from Rouse's parking lot to a barbeque restaurant in Mandeville where he observed McIntosh exit the vehicle and talk to some people.[124]  After McIntosh left Mandeville, Indes observed McIntosh doing "heat checks" to determine whether he was being followed.[125] Indes recalled that McIntosh made a U-turn in the middle of the street.[126]  Indes was able to turn around and saw McIntosh heading north on Lafayette Street.[127]  Indes testified that they terminated the surveillance as they did not want to make it obvious that they were following McIntosh.[128]

Trooper Sarah Abbott (Gilberti) testified that she made the undercover buys from McIntosh.[129]  Gilberti recalled that she searched the confidential source prior to the November 15, 2015 transaction.[130]  She and the confidential source then met with McIntosh at Rouse's parking lot in Covington.[131]  The confidential source got out of the vehicle, exchanged money for the drugs from McIntosh, and got back into the vehicle.[132]  Gilberti witnessed the exchange through the vehicle window.[133]  Thereafter, the confidential source gave Gilberti two bags of marijuana and one bag of heroin that she received from McIntosh.[134]  They drove to a predetermined location and Gilberti gave the drugs to the case agent.[135]  Gilberti explained that they attempted to record the transaction but that the recording device failed.[136]

---

[124] *Id.* at 49, 51, 58
[125] *Id.* at 49.
[126] *Id.* at 50-51.
[127] *Id.*
[128] *Id.* at 50, 59-60.
[129] *Id.* at 67-68, 81-82.
[130] *Id.* at 84-85, 97.
[131] *Id.* at 68.
[132] *Id.* at 68-70.
[133] *Id.* at 86-87.
[134] *Id.* at 70.
[135] *Id.* at 68, 71.
[136] *Id.* at 69.

Trooper Miller testified that he monitored the December 1, 2015 transaction at Sonic from a nearby parking lot.[137]  Miller observed an unidentified black male get into McIntosh's car and drive away.[138]  Miller called Gilberti to confirm that a third person was going to get the narcotics.[139]  Eventually, Gilberti and Miller relocated to a predetermined offsite location and which time Miller determined that the recording device had stopped operating.[140]  Miller learned that the unidentified black male was enroute to Sonic so he had Gilberti return there.[141]  Miller reestablished surveillance and saw McIntosh's vehicle return and McIntosh approach Gilberti's undercover vehicle.[142]  Miller saw McIntosh reach into the vehicle, stand up with what appeared to be money in his hand, and place the money in his pocket and walk back to Sonic.[143]  Gilberti and the confidential source met with Miller at a predetermined location and turned over the marijuana and heroin.[144]

Trooper Indes testified that he also took part in surveillance on December 1, 2015.[145]  Indes was parked directly across from Gilbert's undercover vehicle in the Sonic parking lot.[146]  Indes followed McIntosh's vehicle from Sonic and set perimeter in the area of 190 and Lafayette Street.[147]  Minutes later, the target car returned going west on 190, and Indes followed it back to the Sonic.[148]

---

[137] ECF No. 9-2 at 75, Trial Tr., 10/25/16.
[138] *Id.* at 92-93.
[139] *Id.* at 97.
[140] *Id.* at 106-07.
[141] *Id.* at 106-07.
[142] *Id.* at 107.
[143] *Id.* at 107, 148.
[144] *Id.* at 108-11.
[145] ECF No. 9-3 at 51, Trial Tr. (con't), 10/26/16.
[146] *Id.* at 52.
[147] *Id.* at 52-54.
[148] *Id.* at 54.

Trooper Errol Durr assisted with surveillance on December 1, 2015.[149]  He was stationed in a parking lot adjacent to the Sonic and witnessed McIntosh's vehicle leave the parking lot.[150] Durr followed the vehicle until it parked in a driveway near an empty field on America Street.[151] Durr surveilled the vehicle from a nearby driveway for several minutes and saw the driver walk towards a residence.[152]  Durr drove the streets of the neighborhood as he did not want to be noticed.[153]  When he returned, McIntosh's vehicle was gone.[154]

Gilberti testified that the December 1, 2015 transaction was lengthy and lasted over an hour.[155]  Beforehand, Gilberti met with Miller, received the money, and searched the confidential source.[156]  Gilberti and the confidential source drove to Sonic, ordered food, and then parked.[157] Gilberti recalled that the confidential source called McIntosh but that he did not answer.[158] McIntosh then walked up to the confidential source's side of the vehicle and told them that his "boy" was going to go get the "bud" and the "boy," which Gilberti explained are street terms for heroin and marijuana.[159]  Gilberti saw an unidentified black male leave in McIntosh's vehicle.[160] McIntosh went back into the restaurant.[161]  Eventually, McIntosh returned and told them that the unidentified male was only ten minutes away.[162]  Gilberti and the confidential source left the

---

[149] ECF No. 9-3 at 61, Trial Tr. (con't), 10/26/16.
[150] *Id.*
[151] *Id.* at 61-62.
[152] *Id.* at 63.
[153] *Id.*
[154] *Id.*
[155] *Id.* at 74.
[156] *Id.* at 74, 80, 90, 97-98.
[157] *Id.* at 74-75, 95.
[158] *Id.* at 75.
[159] *Id.* at 75-76.
[160] *Id.* at 75-76, 94.
[161] *Id.* at 76, 78.
[162] *Id.* at 78.

restaurant parking lot because the deal was taking so long.[163]   Shortly thereafter, the confidential

source received a message that "he's on his way back" so they returned to the Sonic parking lot.[164]

When McIntosh's vehicle returned, Gilberti witnessed McIntosh get the drugs from the

unidentified black male and approach her undercover vehicle on passenger side.[165]   Gilberti

reached over the confidential source to give McIntosh $500 in exchange for the drugs.[166]   She

stuck the drugs in the cup holder, as is her practice.[167]

Kacey Amorello, a forensic scientist at the Louisiana State Police Crime Lab and an expert

in fingerprint analysis, developed latent prints from the evidence.[168]   She took photographs of the

prints.[169]   Amorello testified that there were latent prints on the marijuana bag.[170]   She testified

that she was also able to develop a print from a bag of heroin confiscated on December 1, 2015.[171]

Erin Landry, a forensic scientist Louisiana State Police Crime Lab and latent fingerprint

comparison expert, received seven digital pictures from Amorello.[172]   Landry found three of those

pictures suitable for analysis including prints from plastic ziplock bags containing marijuana

confiscated on November 19, 2015.[173]   Landry compared the prints to McIntosh's fingerprints.[174]

She determined that the fingerprint from a bag of marijuana from the November 19, 2015

transaction matched McIntosh's fingerprint.[175]

---

[163] *Id.* at 79, 96.
[164] *Id.* at 96.
[165] *Id.* at 79-80.
[166] *Id.* at 80-81.
[167] *Id.* at 81.
[168] ECF No. 9-2 at 172, 177-78, 185, 187, Trial Tr., 10/26/16.
[169] *Id.* at 187.
[170] *Id.* at 191-92.
[171] *Id.* at 193.
[172] ECF No. 9-3 at 4, 6, 9, 25, Trial Tr. (con't), 10/26/16.
[173] *Id.* at 12-13.
[174] *Id.* at 15-17.
[175] *Id.* at 17, 21-22, 26.

Margaret Steele, a drug chemistry analyst with the Louisiana State Police Crime Lab, analyzed the controlled substances.[176]  Steele testified that the exhibits from November 19, 2015 and December 1, 2015 contained heroin and marijuana.[177]

In an effort to show that confrontation violation had a substantial and injurious effect or influence on the verdict, McIntosh argues that the prosecution referred to the violative statements during closing argument.[178]  That is incorrect.  While in its closing argument, the prosecution referred to some statements made by the confidential source captured by the December 1, 2015 recording, specifically, "That's how we always do it, we order food," and "You scared the f--- out of me.  James, what are you doing?,"[179] the motion in limine solely related to the portions of the recording which depicted the confidential source reading alleged text messages.[180]  The prosecution did not refer to the text messages in either its initial closing argument or in its rebuttal argument.[181]  Rather, the prosecution relied on the testimony of Troopers Miller and Gilberti, McIntosh's fingerprints, and McIntosh's own statements recorded on December 1, 2015.[182]

McIntosh also argues that it is not possible to find beyond a reasonable doubt that the error could not have affected the verdict because it was nonunanimous.[183]  However, the recording related to the December 1, 2015 transaction, and the verdict as to counts two and four, which charged distribution of heroin and marijuana on December 1, 2015, were unanimous.[184]

---

[176] *Id.* at 29, 32-33.
[177] *Id.* at 37-39, 42-46.
[178] ECF No. 1-2 at 8-9, 11.
[179] ECF No. 9-3 at 118, Trial Tr. (con't), 10/26/16.
[180] *See* ECF No. 9-1 at 101, Motion to Exclude Testimonial Hearsay, 10/7/16.
[181] ECF No. 9-3 at 115-20, 134-39, Trial Tr. (con't), 10/26/16.
[182] *Id.* at 115-19, 135.
[183] ECF No. 1-2 at 11-12.
[184] ECF No. 9-1 at 36, Trial Mins., 10/26/16; ECF No. 9-3 at 155, Trial Tr. (con't), 10/26/16.

Although the trial court may have erred in allowing the admission of the portions of the recording that included the confidential source reading alleged text messages from McIntosh, it cannot be fairly said that those statements substantially influenced the verdict. Rather, the critical evidence that resulted in McIntosh's convictions was undoubtedly the testimony of Trooper Miller and Gilberti combined with McIntosh's fingerprints on a marijuana bag from the November 19, 2015 transaction, and McIntosh's own repeated statements on December 1, 2015 that the drugs were on their way. Thus, any error was harmless.

For the foregoing reasons, the state courts' decision rejecting his claim was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, McIntosh is not entitled to habeas corpus relief based upon the alleged violation of his right to confrontation by virtue of the admission of alleged text messages through the statements of the confidential source.

## B. **Claim Two: Ineffective Assistance of Trial Counsel**

McIntosh alleges ineffective assistance of trial counsel. Specifically, he asserts his trial counsel was ineffective in opening the door when he questioned Trooper Miller about whether he intended on attempting further transactions with McIntosh after December 1, 2015.

The State responds that Miller's testimony on re-direct that McIntosh was in jail did not prejudice McIntosh.

### 1. **State Court Rulings**

On direct appeal, McIntosh claimed that the State improperly introduced other crimes evidence when it introduced testimony that McIntosh was in custody on an unrelated charge at the time he was arrested on the charges in this case. In the last reasoned opinion, the Louisiana First Circuit Court of Appeals rejected that claim as follows:

24

## ASSIGNMENT OF ERROR # 1: OTHER CRIMES EVIDENCE

In assignment of error number one, defendant contends that the State improperly introduced other crimes evidence when it purposefully sought to highlight the fact that defendant was already incarcerated for an unrelated offense at the time the arrest warrant for the instant offenses was executed.  Defendant unsuccessfully requested a mistrial after the alleged prejudicial comments.  The State asserts that by failing to object to the initial mention of defendant being arrested for another offense, defendant effectively waived the claim on appeal.  Moreover, the State argues that trial counsel "opened the door" during cross-examination.

A mistrial under the provisions of La. Code Crim. P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of a witness who is not a court official make it impossible for a defendant to obtain a fair trial. **State v. Kitts**, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So.3d 939, 968. However, an impermissible reference to another crime deliberately elicited of a witness by the prosecutor is imputable to the State and mandates a mistrial under La. Code Crim. P. art. 770.  **State v. Lawson**, 2018-0382 (La. App. 1st Cir. 11/8/18), 2018 WL 5876815 *11 (unpublished).  Because a mistrial is a drastic remedy that should be granted only when a defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial, "mere possibility of prejudice is not sufficient."  **State v. Caminita**, 2016-0121 (La. App. 1st Cir. 9/16/16), 203 So.3d 1100, 1106, writ denied, 2016-2045 (La. 9/6/17), 224 So.3d 988.  A reviewing court should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused.  La. Code Crim. P. art. 921. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal without finding an abuse of that discretion.  **State v. Friday**, 2010-2309 (La. App. 1st Cir. 6/17/11), 73 So.3d 913, 933, writ denied, 2011-1456 (La. 4/20/12), 85 So.3d 1258.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant.  **State v. Pierre**, 2012-0125 (La. App. 1st Cir. 9/21/12), 111 So.3d 64, 68, writ denied, 2012-2227 (La. 4/1/13), 110 So.3d 139; see also La. Code Crim. P. art. 770(2).  However, when counsel "opens the door" to the complained-of subject matter, "the other party can then explore the subject fully." **State v. Hunt**, 310 So.2d 563, 568 (La. 1975).  Prior notice of intent to disclose other bad acts is not required when the door has been so opened.  **State v. Marcotte**, 2001-1586 (La. App. 3rd Cir. 5/15/02), 817 So.2d 1245, 1253.

During cross-examination, defense counsel asked Trp. Miller if he had planned on purchasing any more drugs from defendant, to which Miller responded that he had. When asked if he made any more purchases, Trp. Miller responded that he could not make any more purchases because defendant was incarcerated.  Defense counsel made no objection.  Later, while on redirect examination, Trp. Miller, in

response to the State's questions, revealed that the narcotics investigation stopped because defendant was arrested for something else and was incarcerated in the St. Tammany Parish Jail.  At that point, defense counsel objected and moved for mistrial.  The trial court found defense counsel had "opened the door" by asking why the investigation had stopped, thereby revealing defendant's unrelated incarceration.  The trial court did note, however, that the door was "not opened to every other witness."

Here, it is uncontested that defense counsel asked Trp. Miller why no more undercover narcotics purchases were made in the instant investigation.  Thus, Trp. Miller's original answer was not elicited by the State.  The subsequent State questioning fell within the ambit of redirect examination to clarify, and respond to, points made during cross-examination by defense counsel.

Moreover, even had defense counsel not "opened the door" to further testimony regarding defendant's custody status at the time of his arrest on the instant charges, that reference alone was not sufficient to warrant a mistrial.  See **State v. Stevens**, 2013-1162 (La. App. 3rd Cir. 6/18/14), 140 So.3d 1267, 1282, writ denied, 2014-1530 (La. 12/8/14), 156 So.3d 42; cf. **State v. Hayes**, 2010-685 (La. App. 5th Cir. 5/24/11), 70 So.3d 27, 40, writ denied, 2011-1370 (La. 2/3/12), 79 So.3d 1024.

The trial court in the instant case did not abuse its considerable discretion in finding that defendant opened the door to Trp. Miller's testimony about why the investigation ended, giving the State an opportunity to prompt more testimony regarding the procedural details of why the investigation ended when it did.  This claim is without merit.[185]

McIntosh raised his ineffective assistance of counsel argument in his application for post-conviction relief.  The trial court denied the claims as follows:

Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), a petitioner claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, failing below an "effective standard of reasonableness," and (2) the deficient performance prejudiced the petitioner.  *Id.*, 466 U.S. at 687-688, 104 S.Ct. at 2065.  In order to show prejudice, the petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.  In order for a claim of ineffective assistance of counsel to be successful, both prongs of the analysis must be shown..

McIntosh asserts he received ineffective assistance of counsel when his counsel questioned Trooper Miller as to whether the officer planned to purchase any more drugs from petitioner.  The officer responded that he had.  When asked if

---

[185] *McIntosh*, 275 So. 3d at 4-6; ECF No. 9-6 at 25-29, 1st Cir Opinion, 2018 KA 0768, 2/28/19.

those purchases were made, Trooper Miller responded that he had.  When asked if those purchases were made, Trooper Miller responded that he could not do so because the petitioner was incarcerated.  Defense counsel failed to object to this answer.  Later, the state raised the issue on redirect examination for further explanation that the petitioner's incarceration was due to unrelated charges.  At that point, defense counsel objected and moved for a mistrial.  The Court denied the mistrial, finding that defense counsel had "opened the door" to the issue such that the state on redirect could elicit an explanation.  When the underlying issue was analyzed on direct appeal, the appellate court found the petitioner was not prejudiced by the introduction of the other crimes evidence such that a mistrial was mandated.  *See State v. McIntosh*, 2018-0768 (La. App. 1 Cir. 2/28/19); 275 So.3d 1, 5.

Even pretermitting a decision about whether trial counsel's performance was deficient in this regard, the Court finds the petitioner has failed to meet his burden for relief.  The appellate court has already found that the petitioner suffered no prejudice from the introduction of other crimes evidence caused by defense counsel's asserted error.  McIntosh is required to prove both prongs of the *Strickland* analysis, both deficient performance and prejudice resulting from that deficient performance.  Here, the appellate court's decision on the underlying issue forecloses McIntosh from meeting his burden of proving constitutionally ineffective assistance.  This claim is DENIED.[186]

The Louisiana First Circuit Court of Appeals denied relief without reasons.[187]  The Louisiana Supreme Court denied McIntosh's related writ application without assigning reasons.[188]

## 2. <u>AEDPA Standards and *Strickland*</u>

The issue of ineffective assistance of counsel is a mixed question of law and fact.[189]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and

---

[186] ECF 9-7 at 103-04, Judgment on Post-Conviction Relief with Incorporated Reasons for Judgment, 7/14/21.
[187] ECF No. 9-9 at 2, La. App. 1st Cir. Order, 2021 KW 1161, 11/29/21.
[188] *McIntosh*, 353 So. 3d at 725; ECF No. 9-11 at 1, La. Sup. Ct. Order, 2022-KH-00042, 1/18/23.
[189] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

resulting prejudice.[190]  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[191]  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[192]

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[193]  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[194]

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[195] "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[196]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[197]

---

[190] 466 U.S. at 697.

[191] *Id.* at 687-88.

[192] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[193] *Kimler*, 167 F.3d at 893.

[194] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[195] *Harrington*, 562 U.S. at 105.

[196] *Id.*

[197] *Strickland*, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[198]  "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[199]  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.[200]  Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.[201]

### 3. Cross-Examination of Miller

On cross-examination, defense counsel elicited testimony from Trooper Miller that, to maintain the integrity of the investigation, McIntosh was not arrested on December 1, 2015.[202] Defense counsel asked, "You never made any other buys?," to which Miller responded, "I couldn't."[203]  Defense counsel then asked, "What prevented you in January, say in 2016 when you got an arrest warrant from conducting another buy?"[204]  Miller responded, "Cause he was incarcerated."[205]  Miller confirmed that he eventually arrested McIntosh.[206]

On re-direct, the following exchange occurred between the prosecution and Miller:

Q. You were asked why you didn't further this investigation and why you didn't set up more buys.  Why didn't you?

A. He was in jail.

---

[198] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[199] *Harrington*, 562 U.S. at 105.

[200] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

[201] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[202] ECF No. 9-2 at 150, Trial Tr., 10/25/16.

[203] *Id.*

[204] *Id.* at 151.

[205] *Id.*

[206] *Id.* at 153.

Q. Did you put him there?

A. No.

Q. He was arrested on something else?

A. Yes, ma'am.

Q. Could you conduct more narcotics investigations while he is incarcerated?

A. No, ma'am.

Q. So you were forced to end your investigation?

A. Yes, ma'am.

Q. Then you got an arrest warrant for him?

A. Yes, ma'am.

Q. And you arrested him?

A. Yes, ma'am.

Q. Where at?

A. The St. Tammany Parish Jail.[207]

Defense counsel then objected and moved for a mistrial.[208]   The trial court found that defense counsel had opened the door to the questioning and denied the motion for mistrial.[209]

McIntosh fails to demonstrate a reasonable probability that the outcome of his trial would have been different but for his counsel opening the door to testimony that the investigation ended because McIntosh was in custody on another charge.   Initially, the Louisiana First Circuit Court

---

[207] *Id.* at 160.
[208] *Id.* at 160-61, 163.
[209] *Id.* at 161, 163-65.

of Appeals found that the evidence was not so prejudicial that it warranted a mistrial.  McIntosh does not contest that finding.

Further, McIntosh has not shown that the testimony that he was in custody on another charge had an impact on the verdict.  There was no evidence regarding the date on which McIntosh was arrested or the nature of the charge that caused him to be arrested.[210]  Nor was there any evidence of the date on which Miller arrested McIntosh on the charges in this case.[211]  Further, there was no evidence that McIntosh remained in custody at the time of trial.[212]  Additionally, the trial court instructed the jury that "[e]vidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial is to be considered only for a limited purpose.  Remember the accused is on trial only for the offense change.  You may not find him guilty of this offense merely because he may have committed another offense."[213]  Courts have repeatedly held that jurors are presumed to follow their instructions, and there is no reason to believe that jurors in this case disregarded those instructions.[214]  Finally, given the strong evidence of McIntosh's guilt, including the eyewitness testimony of Troopers Miller and Gilberti, McIntosh's fingerprint on a bag of marijuana from the November 19, 2015 transaction, and McIntosh's own incriminating statements made on December 1, 2015, McIntosh has not shown a reasonable likelihood that the outcome of the trial would have been different had his counsel not opened the door to testimony that McIntosh was in custody on another charge.[215]

---

[210] *See id.* at 163-65.

[211] *Id.*

[212] *Id.* at 164.

[213] ECF No. 9-3 at 146, Trial Tr. (con't), 10/26/16.

[214] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.); *Woods v. Johnson*, 75 F.3d 1017, 1036 n.29 (5th Cir. 1996).

[215] *Cf. Rousell v. Caldwell*, No. 17-846, 2017 WL 2790701, at *16 (E.D. L.A. June 7, 2017) (testimony that petitioner had been previously arrested was harmless where no evidence was elicited regarding the nature of the charge or whether petitioner was convicted, a limiting instruction was given, and there was overwhelming evidence of guilt), *R&R adopted*, 2017 WL 2278207 (E.D. L.A. June 26, 2017).

For all these reasons, McIntosh has failed to show that he suffered prejudice as a result of his trial counsel opening the door to testimony that McIntosh was in jail on another charge when Miller arrested him. The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*. McIntosh is not entitled to relief as to

### **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that James Dewitt McIntosh's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[216]

New Orleans, Louisiana, this _____21st_____ day of December, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[216] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).